Jimmy Brown HUMPHRIES, Individually and as Executor of the Estate of Mamie Ruth Humphries Henderson, Deceased, Appellant,

v.

Marvin Wayne HUMPHRIES and Tommy M. Humphries, Appellees.

No. 12–11–00106–CV.

Court of Appeals of Texas, Tyler.

Aug. 31, 2011.

Rehearing Overruled Oct. 3, 2011.

Richard L. Ray, Victoria Ray Thatcher, Ray & Thatcher Attorneys at Law P.C., Canton, for Appellant.

Martin R. Bennett, Athens, for Appellee.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

## OPINION

BRIAN HOYLE, Justice.

Jimmy Brown Humphries, individually and as executor of the estate of Mamie Ruth Humphries Henderson, deceased, appeals the trial court's judgment entered in favor of Marvin Wayne Humphries and Tommy M. Humphries. In one issue, Jimmy argues that the trial court erred in granting Marvin and Tommy's motion for summary judgment. We affirm.

### BACKGROUND

This case involves a dispute among three half-brothers over their respective ownership interests in land. As early as the mid–1940s, Mamie Ruth Edwards began cohabitating with J.T. Humphries. J.T. had been married twice before and had two sons, Marvin and Tommy—one from each of his prior marriages. During the 1940s, Mamie and J.T. began representing to others that they were married. J.T. and Mamie were subsequently ceremonially married on May 3, 1951. Mamie and J.T. had one son, Jimmy.

J.T. died intestate in 1961, and Mamie served as executrix of his estate. In her role as executrix, Mamie classified the land J.T. obtained prior to May 3, 1951, as community property and listed in the inventory of J.T.'s estate an undivided one-half interest in the land at issue. Mamie classified the other one-half interest in the land as her property.

When Mamie died in 1986, she left her entire estate to Jimmy. In 1990, Jimmy

filed an inventory of Mamie's estate, which showed that she owned an undivided one-half interest in the land. Accordingly, Jimmy believed that he owned an undivided two-thirds interest in the land (one-half from his mother and one-sixth from his father) and that Marvin and Tommy each owned an undivided one-sixth interest in the land. Conversely, Marvin and Tommy believed that all three sons owned an undivided one-third interest in the land because the land was J.T.'s separate property, and, thus, none of it passed to Mamie upon his death.

Marvin and Tommy sued Jimmy individually and as executor of Mamie's estate, seeking damages for slander of title and partition of the land.[1] Jimmy countersued requesting a declaratory judgment that he owns an undivided two-thirds interest in the land and partition of the land accordingly. Thereafter, Marvin and Tommy amended their petition to request a declaratory judgment that (1) any property acquired by J.T. prior to May 3, 1951, was not his and Mamie's community property and (2) any common law marriage that may have existed prior to May 3, 1951, between J.T. and Mamie cannot support Jimmy's claim because the applicable statute of limitations has expired.[2]

On the same day they amended their pleadings, Marvin and Tommy filed a motion for summary judgment, in which they argued that no common law marriage can

be asserted to exist prior to May 3, 1951, because the statute of limitations to assert the existence of a common law marriage had expired. As a result, they urged that any property J.T. acquired prior to May 3, 1951, cannot be the community property of J.T. and Mamie. Marvin and Tommy further requested a declaration that (1) the filing of the inventories and the approval of the inventories in J.T.'s and Mamie's estates did not adjudicate the ownership of any land owned by J.T. or Mamie at the times of their respective deaths and (2) the existence of a common law marriage between J.T. and Mamie prior to May 3, 1951, cannot be asserted because limitations has expired. Jimmy filed a response to the motion for summary judgment in which he argued that Marvin and Tommy's motion should be denied because (1) Marvin and Tommy failed to plead the affirmative defense of limitations, (2) the inventories filed in J.T.'s and Mamie's estates are some evidence that the land was J.T. and Mamie's community property, (3) other evidence shows that J.T. and Mamie were common law spouses in the 1940s, (4) in their original petition, Marvin and Tommy judicially admitted that J.T. and Mamie were common law spouses, and (5) the statute of limitations referenced by Marvin and Tommy does not apply to J.T. and Mamie's alleged common law marriage. Ultimately, the trial court denied Marvin and Tommy's motion with regard to the issue of the inventories, but granted the

1. A number of relevant pleadings were not included in the record for this appeal. However, the same parties previously appealed this same proceeding. Therefore, we take judicial notice of the record in that appeal. *See Trevino v. Pemberton,* 918 S.W.2d 102, 103 n. 2 (Tex.App.-Amarillo 1996, orig. proceeding) (appellate court may take judicial notice of own records in same or related proceeding involving same or nearly same parties); *Muller v. Leyendecker,* 697 S.W.2d 668, 675 (Tex.App.-San Antonio 1985, writ ref'd n.r.e.). Additionally, we requested Mar-

vin and Tommy's original petition as a supplement to the record. *See* Tex.R.App. P. 34.5(c)(1).

2. *See* Act of May 29, 1989, 71st Leg., R.S., ch. 369, § 9, 1989 Tex. Gen. Laws 1458, 1461, *amended by* Act of May 24, 1995, 74th Leg., R.S., ch. 891, § 1, 1995 Tex. Gen. Laws 4404, 4404, *repealed by* Act of May 26, 1997, 75th Leg., R.S., ch. 7, § 1, 1997 Tex. Gen. Laws 8, 15.

motion with regard to the statute of limitations' barring recognition of J.T. and Mamie's alleged common law marriage.

Marvin and Tommy filed a second motion for summary judgment again arguing that the inventory in an estate is not conclusive evidence of the character of the land as either community or separate property. Jimmy filed a response in which he argued that the inventory is evidence of the character of the property and that J.T. and Mamie were common law spouses before May 3, 1951. The trial court concluded that neither the filing of an inventory or the court's approval of an inventory in J.T.'s and Mamie's estates adjudicated the ownership of any land they owned at the time of their deaths. Accordingly, the trial court granted Marvin and Tommy's motion.

The matter proceeded to a bench trial, following which the trial court found that Marvin, Tommy, and Jimmy each owned an undivided one-third interest in the land. The trial court ordered the land partitioned and appointed commissioners. This appeal followed.

### MOTION FOR SUMMARY JUDGMENT

In his sole issue, Jimmy contends that the trial court erred in granting Marvin and Tommy's motions for summary judgment because (1) the statute of limitations was waived when it was not pleaded as an affirmative defense, (2) the statute of limitations referenced by Marvin and Tommy does not apply to J.T. and Mamie's common law marriage, (3) Marvin and Tommy judicially admitted that J.T. and Mamie were common law spouses, and (4) the inventories from J.T.'s and Mamie's estates are evidence of the existence of their common law marriage.

### STANDARD OF REVIEW

The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). When the movant seeks summary judgment on a claim in which the nonmovant bears the burden of proof, the movant must either negate at least one essential element of the nonmovant's cause of action or prove all essential elements of an affirmative defense. *See Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995). When the movant seeks summary judgment on a claim in which the movant bears the burden of proof, the movant must prove all essential elements of the claim. *Winchek v. Am. Express Travel Related Servs. Co.,* 232 S.W.3d 197, 201 (Tex.App.-Houston [1st Dist.] 2007, no pet.). Once the movant has established a right to summary judgment, the burden of proof shifts to the nonmovant to respond to the motion and present to the trial court any issues that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678–79 (Tex.1979).

We review de novo the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan,* 199 S.W.3d 291, 292 (Tex. 2006); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999). All theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. *See* TEX.R. CIV. P. 166a(c).

### PLEADING REQUIREMENTS

As his first basis for challenging the trial court's summary judgment, Jimmy argues that Marvin and Tommy failed to

properly plead the affirmative defense of limitations.

### Applicable Law

A party must specifically plead affirmative defenses, including that a claim is barred by the applicable statute of limitations. *See* Tex.R. Civ. P. 94. The purpose of pleadings is to give the opposing party notice of claims, defenses, and relief sought. *Perez v. Briercroft Serv. Corp.*, 809 S.W.2d 216, 218 (Tex.1991). We look to the substance of a pleading to determine its nature, not merely the title given to it. *State Bar of Tex. v. Heard*, 603 S.W.2d 829, 833 (Tex.1980) (orig. proceeding).

A properly pleaded affirmative defense may serve as the basis for a summary judgment. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494 (Tex. 1991). Similarly, an unpleaded affirmative defense may serve as a basis for summary judgment when it is raised in the motion and the opposing party does not object. *Id.* Conversely, when an opposing party objects, an unpleaded affirmative defense may not serve as the basis for a summary judgment. *DeBord v. Muller*, 446 S.W.2d 299, 301 (Tex.1969).

Requests for a declaratory judgment also may serve as a basis for summary judgment. *In re Ellison Grandchildren Trust*, 261 S.W.3d 111, 116 (Tex.App.-San Antonio 2008, pet. denied). Declaratory judgments may be used to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations. Tex. Civ. Prac. & Rem.Code Ann. § 37.002 (West 2008). Declaratory judgments are reviewed under the same standards as other judgments. *Id.* § 37.010.

### Discussion

Jimmy places great emphasis on the fact that Marvin and Tommy failed to plead the statute of limitations applicable to common law marriages as an affirmative defense. However, Jimmy did not allege in his counterclaim that J.T. and Mamie were common law spouses. Therefore, based on Jimmy's pleading, there was no allegation of common law marriage for Marvin and Tommy to avoid.

Instead, Marvin and Tommy raised the issue through their amended petition for declaratory judgment, in which they requested that any common law marriage that may have existed prior to May 3, 1951, between J.T. and Mamie be declared unenforceable because the applicable statute of limitations had expired. Marvin and Tommy were entitled to rely upon their petition for declaratory judgment to support their motion for summary judgment. *Ellison*, 261 S.W.3d at 116. Jimmy did not argue that Marvin and Tommy's request for declaratory judgment was improper or that it failed to provide Jimmy with notice of Marvin and Tommy's claims. In fact, Marvin and Tommy's amended petition clearly provided Jimmy with notice of their claim that J.T. and Mamie's common law marriage was barred by limitations. Accordingly, we conclude that Marvin and Tommy met their pleading requirement for their motion for summary judgment.

### COMMON LAW MARRIAGE—STATUTE OF LIMITATIONS

Jimmy next contends that the statute of limitations cited by Marvin and Tommy does not apply to J.T. and Mamie's common law marriage.

### Applicable Law

Common law marriages have been recognized in Texas since 1847. *See Russell v. Russell*, 865 S.W.2d 929, 931 (Tex.1993) (citing *Tarpley v. Poage's Adm'r*, 2 Tex. 139, 149 (1847)). However, that recognition has been described as "grudging," and occasionally the legislature has considered

whether to abolish the practice altogether. *Russell*, 865 S.W.2d at 931. In 1989, the legislature declined to abolish common law marriages, but instead, amended the law to make proof of the marriages more difficult. *Id.* As a result, Texas Family Code, Section 1.91 was amended to include the following language: "A proceeding in which a marriage is to be proved under this section must be commenced not later than one year after the date on which the relationship ended or not later than one year after September 1, 1989, whichever is later." *Id.*[3] By its action, the legislature intended for Section 1.91 to strictly limit a person's ability to prove a common law marriage. *See Shepherd v. Ledford*, 962 S.W.2d 28, 31 (Tex.1998).

In 1995, the legislature again considered Section 1.91. *See Russell*, 865 S.W.2d at 931.[4] This time, the legislature lessened the requisite proof by amending Section 1.91 to state as follows: "If a proceeding in which a marriage is to be proved under Subsection (a)(2) is not commenced before the second anniversary of the date on which the parties separated and ceased living together, it is rebuttably presumed that the parties did not enter into an agreement to be married."[5] However, the legislature also set forth that the change to Section 1.91 does not permit an action to be commenced on or after September 1, 1995, to prove the existence of a common law marriage for which an action was barred before September 1, 1995, for failure to bring the action before the first anniversary of the date the relationship ended. *See id.*[6]

### Discussion

■ Jimmy argues that Section 1.91's one year statute of limitations does not apply to his attempt to prove J.T. and Mamie's common law marriage because the statute of limitations was not added until 1989 and they began their marriage in the 1940s. However, Jimmy's argument is contrary to the plain language of the statute. The 1989 amendment to Section 1.91 imposed a one year limitations period on attempts to prove common law marriages in which the relationship ended before September 1, 1989.[7] When J.T. died in 1961, his and Mamie's relationship ended. Thus, Jimmy's attempt to prove a common law marriage between J.T. and Mamie is barred by former Section 1.91's one year statute of limitation because the case was not filed by September 1, 1990. *See Lopez v. Trevino*, No. 04–03–00352–CV, 2004 WL 1054733, at *1–2 (Tex.App.-San Antonio 2004, no pet.) (mem. op.).

■ Further, Jimmy cannot argue that the 1995 amendment should apply to his

---

**3.** *See* Act of May 29, 1989, 71st Leg., R.S., ch. 369, § 9, 1989 Tex. Gen. Laws 1458, 1461, *amended by* Act of May 24, 1995, 74th Leg., R.S., ch. 891, § 1, 1995 Tex. Gen. Laws 4404, 4404, *repealed by* Act of May 26, 1997, 75th Leg., R.S., ch. 7, § 1, 1997 Tex. Gen. Laws 8, 15.

**4.** Act of May 24, 1995, 74th Leg., R.S., ch. 891, § 1, 1995 Tex. Gen. Laws 4404, 4404, *repealed by* Act of May 26, 1997, 75th Leg., R.S., ch. 7, § 1, 1997 Tex. Gen. Laws 8, 15.

**5.** Act of May 24, 1995, 74th Leg., R.S., ch. 891, § 1, 1995 Tex. Gen. Laws 4404, 4404, *repealed by* Act of May 26, 1997, 75th Leg., R.S., ch. 7, § 1, 1997 Tex. Gen. Laws 8, 15.

**6.** In 1997, the legislature then recodified the Family Code, and Section 1.91 became Section 2.401. *See* Act of April 3, 1997, 75th Leg., R.S., ch. 7, § 1, 1997 Tex. Gen. Laws 8, 15.

**7.** Act of May 29, 1989, 71st Leg., R.S., ch. 369, § 9, 1989 Tex. Gen. Laws 1458, 1461, *amended by* Act of May 24, 1995, 74th Leg., R.S., ch. 891, § 1, 1995 Tex. Gen. Laws 4404, 4404, *repealed by* Act of May 26, 1997, 75th Leg., R.S., ch. 7, § 1, 1997 Tex. Gen. Laws 8, 15.

suit and that he should only have to rebut the presumption that J.T. and Mamie did not enter into an agreement to be married. The legislature specifically stated that the 1995 amendment does not permit a person to prove the existence of a common law marriage that was barred before September 1, 1995.[8] Because an attempt to prove J.T. and Mamie's common law marriage was barred by limitations on September 1, 1990, the 1995 amendment is of no assistance to Jimmy. Therefore, we hold that there was adequate summary judgment evidence before the trial court to demonstrate as a matter of law that Jimmy's attempt to prove or rely on J.T. and Mamie's common law marriage is barred by limitations.

### JUDICIAL ADMISSION

Jimmy next argues that the trial court erred in granting Marvin and Tommy's summary judgment because Marvin and Tommy judicially admitted that J.T. and Mamie were common law spouses.

### Applicable Law

■ A judicial admission must be clear, deliberate, and unequivocal. *Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 905 (Tex.2000) (quoting *Regency Advantage Ltd. P'ship v. Bingo Idea–Watauga, Inc.,* 936 S.W.2d 275, 278 (Tex.1996)). A judicial admission includes assertions of fact, not pleaded in the alternative, in the live pleadings of a party. *See Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 568 (Tex.2001).

■ When a party judicially admits facts that establish a common law marriage, the party is estopped from then claiming the contrary, including a claim that the common law marriage is barred by limitations. *See Shepherd,* 962 S.W.2d

at 33. A true judicial admission relieves the other party's burden to prove the common law marriage and renders the statute of limitations found in Section 1.91 inapplicable. *Id.*

### Discussion

■ Jimmy argues that Marvin and Tommy judicially admitted J.T. and Mamie's common law marriage in their original petition when they stated, "[Jimmy's] mother, [Mamie], the common-law wife of J.T. Humphries, survived him." For at least two reasons, Marvin and Tommy's statement is not a judicial admission. First, Marvin and Tommy amended their petition. Thus, their original petition was not their live pleading when the trial court considered Marvin and Tommy's motion for summary judgment. Only a factual assertion in a live pleading may constitute a judicial admission. *See Holy Cross Church,* 44 S.W.3d at 568. Second, the statement is not clear and unequivocal with regard to the timing of Mamie's becoming J.T.'s common law wife. *See Horizon/CMS Healthcare,* 34 S.W.3d at 905 (only clear and unequivocal assertion constitutes judicial admission). In fact, in the very next sentence of their original petition, Marvin and Tommy alleged that the land was J.T.'s separate property, a position that is inconsistent with J.T. and Mamie's being common law spouses in the 1940s.

■ Jimmy is correct that Marvin and Tommy's admission may still be an evidentiary admission, and, thus, serve as some evidence that J.T. and Mamie were common law spouses. However, an evidentiary admission, unlike a judicial admission, does not relieve a party from its burden to prove the common law marriage.

8. Act of May 24, 1995, 74th Leg., R.S., ch. 891, § 1, 1995 Tex. Gen. Laws 4404, 4404, *repealed by* Act of May 26, 1997, 75th Leg., R.S., ch. 7, § 1, 1997 Tex. Gen. Laws 8, 15.

*See Shepherd,* 962 S.W.2d at 33. Because J.T. and Mamie's common law marriage is barred by limitations, only a judicial admission could lead to a finding of the existence of a common law marriage. *See id.* (stipulation that served as judicial admission relieved plaintiff of burden to prove common law marriage, which she would not have been able to prove otherwise). Therefore, we conclude that Marvin and Tommy's statement in their original petition regarding Mamie's being the common law wife of J.T. cannot be used to defeat their summary judgment and is, therefore, inconsequential.

### OTHER EVIDENCE OF COMMON LAW MARRIAGE

Finally, Jimmy argues that a fact issue exists precluding summary judgment because he produced evidence of J.T. and Mamie's common law marriage. Jimmy argues that this additional evidence, including the inventories from J.T.'s and Mamie's estates showing that the land was treated as community property, establishes a fact issue because "limitations does not apply." To the contrary, we have already concluded that the statute of limitations contained in Section 1.91 bars Jimmy's attempt to prove that J.T. and Mamie were common law spouses.[9] Because the trial court properly granted Marvin and Tommy's motion for summary judgment on the issue of limitations, Jimmy's remaining evidence of a common law marriage is inconsequential.

### DISPOSITION

Jimmy has not shown that the trial court erred in granting Marvin and Tommy's motions for summary judgment. Accordingly, Jimmy's sole issue is overruled.

9. *See* Act of May 29, 1989, 71st Leg., R.S., ch. 369, § 9, 1989 Tex. Gen. Laws 1458, 1461, *amended by* Act of May 24, 1995, 74th Leg., R.S., ch. 891, § 1, 1995 Tex. Gen. Laws 4404,

Having overruled Jimmy's sole issue, we *affirm* the trial court's judgment.